IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE WILCOX, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 8385 |
| | ) | |
| v. | ) | Magistrate Judge Cole |
| | ) | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Christine Wilcox, seeks review of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("Agency") denying her application for Disability Insurance Benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 423(d)(2), and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). 42 U.S.C. § 1382c(a)(3)(A). Ms. Wilcox asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision. For the reason stated below, Ms. Wilcox's motion is granted and this matter is remanded to the Commissioner.

**I.**

**BACKGROUND**

**A.**

**Ms. Wilcox's Impairments**

As this case presents only legal issues regarding the ALJ's decision, we shall dispense with an extended recounting of the medical evidence. In brief, Ms. Wilcox suffers from coronary artery

disease, fibromyalgia, degenerative joint disease of the right knee, degenerative disc disease of the lumbar spine, ulcerative colitis, and depression. She takes, or has taken, a veritable pharmacy's worth of prescription medications. (R. 273, 293-94, 302). Doctors have noted she is also obese. (R. 550, 552, 559).

## B.

## The ALJ's Decision

The ALJ found that Ms. Wilcox suffered from the following severe impairments: "coronary artery disease; connective tissue disorder, degenerative joint disease of the right knee, degenerative disc disease of the lumbar spine with residuals of surgery, and ulcerative colitis." (R. 14). She noted that the medical record indicated a history of depression, but concluded it was not a severe impairment, saying there was no treatment, no psychiatric hospitalizations, and the disability agency's consulting psychologist reported a normal clinical assessment. (R. 14). But the ALJ said she would account for Ms. Wilcox's difficulties with concentration by limiting her to "unskilled work, which by its vocational definition, is simple in nature." (R. 14, 22). The ALJ then found that Ms. Wilcox did not have an impairment or combination of impairments that met or equaled a listed impairment. (R. 15-16). Specifically, the ALJ focused on the listings pertaining to major dysfunction of a joint (listing 1.02), spinal arachnoiditis (listing 1.04), inflammatory arthritis (listing 14.00), and coronary artery disease (listings 4.01, 4.04). (R. 16).

The ALJ then determined that Ms. Wilcox retained the capacity to perform a limited range of sedentary work. (R. 16). She had to be allowed to stand 15 to 20 minutes at a time at will. She could balance, stoop, kneel, crouch, or crawl for no more than 12% of a workday. She could only occasionally operate bilateral foot controls. Ms. Wilcox could not be exposed to extreme cold and

2

could not climb ladders, ropes, or scaffolds. She also could not work around hazardous machinery or at unprotected heights. The ALJ did not mention any limitation to unskilled work. (R. 16). The ALJ then recounted Ms. Wilcox's allegations and stated that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 18). The ALJ went on to discuss the medical evidence, noting a long history of treatment and surgeries for multiple impairments. (R. 18-23).

The ALJ then determined that Ms. Wilcox could no longer perform her past work as a hair stylist, which was semi-skilled, light to medium work, because it was "performed at an exertional level in excess of sedentary work." (R. 23). The ALJ then explained that, at the hearing, she had questioned the vocational expert about whether there were jobs that an individual with Ms. Wilcox's residual functional capacity and a limitation to simple work could perform. The ALJ accepted the vocational expert's testimony that there were – jobs like account clerk, information clerk, or order clerk. (R. 24). The vocational expert testified that the jobs existed in significant numbers nationally and regionally. (R. 24). The ALJ noted that Ms. Wilcox's counsel had stated that he was unable to reproduce data regarding the numbers of these jobs. The ALJ said she was "sustaining" that objection, but clearly she meant the opposite. (R. 24). Finally, the ALJ determined that Ms. Wilcox retained the capacity to perform work that existed in significant numbers as was, therefore, not disabled.

II.

DISCUSSION

A.

**The Standard of Review**

The applicable standard of review of the Commissioner's decision is a familiar one. The court must affirm the decision if it is supported by substantial evidence. 42 U.S.C. §§ 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court may not reweigh the evidence, or substitute its judgment for that of the ALJ. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Berger*, 516 F.3d at 544. Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408 (7th Cir. 2008); *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). Conclusions of law are not entitled to such deference, however, so where the Commissioner commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

While the standard of review is deferential, the court cannot act as a mere "rubber stamp" for the Commissioner's decision. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). An ALJ is required to "minimally articulate" the reasons for his decision. *Berger*, 516 F.3d at 544; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Although the ALJ need not address every piece of evidence, the ALJ cannot limit his discussion to only that evidence that supports his ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ's decision must allow the

4

court to assess the validity of his findings and afford the claimant a meaningful judicial review. *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009). The Seventh Circuit calls this building a "logical bridge" between the evidence and the ALJ's conclusion. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

**B.**

**The Five-Step Sequential Analysis**

The Social Security Regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled:

1) is the plaintiff currently unemployed;

2) does the plaintiff have a severe impairment;

3) does the plaintiff have an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations;

4) is the plaintiff unable to perform his past relevant work; and

5) is the plaintiff unable to perform any other work in the national economy?

20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005). An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. 20 C.F.R. §416.920; *Briscoe*, 425 F.3d at 352; *Stein v. Sullivan,* 892 F.2d 43, 44 (7th Cir. 1990). A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. §404.1520; *Stein*, 892 F.2d at 44. The claimant bears the burden of proof through step four; if it is met, the burden shifts to the Commissioner at step five. *Briscoe*, 425 F.3d at 352, *Brewer v. Chater,* 103 F.3d 1384, 1391 (7th Cir. 1997).

5

## C.

### Analysis

There are three problems – which happen to be recurring issues – with the ALJ's decision that necessitate a remand. The first is that the ALJ based her adverse credibility determination solely on the medical evidence. The second is that, despite having made a point of saying she would, the ALJ failed to account for Ms. Wilcox's limitations in concentration in her residual functional ("RFC") capacity determination. The third is that the ALJ failed to adequately account for Ms. Wilcox's obesity.

### 1.

In assessing Ms. Wilcox's credibility, the ALJ employed the familiar boilerplate, or template, that the Seventh Circuit has criticized repeatedly: "the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 18). The cart-before-the-horse phrasing is, the Seventh Circuit has repeatedly held, flatly wrong. *See e.g.*, *Moore v. Colvin*. 743 F.3d 1118, 1122 (7th Cir. 2014)("We have repeatedly condemned the use of that boilerplate language because it fails to link the conclusory statements made with objective evidence in the record."); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir.2012)("It puts the cart before the horse, in the sense that the determination of capacity must be based on the evidence, including the claimant's testimony, rather than forcing the testimony into a foregone conclusion."); *Bjornson v. Astrue*, 671 F.3d 640, 644–46 (7th Cir.2012)("The Social Security Administration had better take a close look at the utility and intelligibility of its 'templates.'"); *Parker v. Astrue*, 597 F.3d 920, 922 (C.A.7

(Wis.),2010)("It is not only boilerplate; it is meaningless boilerplate.").

But, still, despite repeated admonitions and chastising from the Court of Appeals, the phrasing continues unabated in every social security opinion that comes from ALJs at least in this District.[1] The phrase seems to have no purpose, and the ALJs' stubbornness in insisting on using it in every opinion is mystifying. In at least one case before the Seventh Circuit, the Commissioner vainly attempted to defend it as "an indispensable aid to the Social Security Administration's overworked administrative law judges." But that is a nonsensical and self-refuting rejoinder. The use of a phrase or test that is, by definition, improper and pointless cannot be an aid in any legitimate sense to any judicial officer in the performance of his duties. Moreover, not even the Commissioner's lawyers know what the boilerplate or template means. *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). One begins to suspect that ALJs perversely trot out the phrase simply to vex the Seventh Circuit.

In any event, the Court has consistently held that allowed that the boilerplate is not toxic, so long as the ALJs supplement it with legitimate and sufficient reasons for finding the claimant not credible. When they do so, the boilerplate is not a problem, it's no more than a pet peeve. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014); *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013); *Pepper v. Colvin*, 712 F.3d 351, 367–68 (7th Cir.2013); *Filus*, 694 F.3d at 868. Here, the ALJ did provide her rationale for disbelieving Ms. Wilcox's allegations. But, unfortunately, that rationale is limited to the medical evidence.

---

[1] This is not the only area where Administrative Law Judges refuse to acknowledge the Seventh Circuit's instructions. *See infra* at 11.

In connection with her credibility determination, the ALJ recited the medical evidence at some length, and she clearly rejected Ms. Wilcox's allegations because they were not supported by that medical evidence. Seventh Circuit case law does not allow an ALJ to base a credibility finding on the medical evidence alone. *See, e.g., Moore,* 743 F.3d at 1125; *Pierce*, 739 F.3d at 1050; *Bjornson*, 671 F.3d at 646, 648; *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). While the ALJ mentioned Ms. Wilcox's daily activities, she did not say what she made of them. She noted that Ms. Wilcox needed help around the house from her son, needed help getting dressed, spent most of the day laying down, and took Norco, a narcotic pain reliever, up to six times a day. Presumably, the ALJ did not believe the extent of Ms. Wilcox's testimony abut her limited activities because such allegations are consistent with an inability to sustain a regular work schedule. *See, e.g.*, *Roddy v.* , 705 F.3d at 639("We have repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time."),*Carradine v. Barnhart*, 360 F.3d 751, 755-56 (7th Cir. 2004)("[Claimant] does not claim to be in wracking pain every minute of the day. When she feels better for a little while, she can drive, shop, do housework. It does not follow that she can maintain concentration and effort over the full course of the work week."); *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014)("We previously have acknowledged that a claimant's election to undergo serious treatment, such as having surgery and taking 'heavy doses of strong drugs,' indicates that the claimant's complaints of pain are likely credible."). So, all the ALJ said she had to go on was the medical evidence, and that, as has been said, is a problem for the Seventh Circuit.

The ALJ also discounted Ms. Wilcox's allegations of depression – which were credited by state agency doctors – due to no treatment, her lack of hospitalizations and "normal" reports on the

days of two of exams (R. 14, 22, 487, 570). But one of those examinations – the one specifically intended to be a psychological consult – noted a depressed, anxious, and irritable mood, along with feelings of hopelessness, helplessness, and anhedonia. (R. 568). It is not clear how the ALJ could consider that "normal," unless the ALJ was coming from a place of existential angst. Moreover, Ms. Wilcox *is* getting treatment for depression; her treating physicians have obviously assessed her as suffering from depression as they have prescribed her psychotropic drugs. And finally, the fact that she has never been institutionalized for psychiatric treatment is a rather flimsy peg on which to hang a credibility assessment. *See Williams v. Colvin,* 757 F.3d 610, 614 (7th Cir. 2014).

**2.**

That is enough to remand this case, but it is worthwhile to discuss two other problems with the ALJ's decision. They are recurring issues as well, and the first has to do with limitations on a claimant's ability to concentrate. As noted above, the ALJ determined that Ms. Wilcox suffered a limitation in her ability to maintain concentration. According to the ALJ, she accounted for this by limiting Ms. Wilcox to unskilled work in her residual functional efficiency finding. (R. 14, 22). As also noted above, however, the ALJ's residual functional capacity finding makes no mention of any limitation to unskilled work. (R. 16). Moreover, in her hypothetical to the vocational expert at the hearing, the ALJ likewise failed to mention any limitation to unskilled work. (R. 78-79). This failure might have taken care of itself as the vocational expert specifically identified unskilled jobs that Ms. Wilcox could perform. (R. 79, 81). But the real problem remains: unskilled work does not account for a problem with concentration.

An ALJ's RFC or hypothetical must include all of a claimant's limitations, including deficiencies of concentration, persistence and pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619

(7th Cir. 2010); *Stewart*, 561 F.3d at 684. The court has "suggested" that the most effective way to do that is to include such limitations specifically in the hypothetical, but has stopped short of "insist[ing], however, on a per se requirement that this specific terminology ("concentration, persistence and pace") be used in the hypothetical in all cases." 627 F.3d at 619. And so, many ALJs – like our ALJ here – have gone on the way they always have despite sage advice from the *O'Connor-Spinner* court.

And so, with ALJs refusing to take the easy way out, the question invariably becomes how much the Seventh Circuit might let them get away with. The Seventh's Circuit's line is a gray one, to say the least. At one point the court acknowledged that its conflicting rulings had left the law in a state of uncertainty. *Kusilek v. Barnhart*, 175 Fed.Appx. 68, 71 (7th Cir. 2006). Since then, cases have continued to go in a variety of directions, and as the court described in *O'Connor-Spinner,* the best that can be said of this line of cases is that they have been highly fact-intensive and difficult to parse. 627 F.3d at 619.

In *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008), the court held that a limitation to "simple, unskilled work" did not account for a moderate limitation in concentration. 539 F.3d at 677-78. Still, the court has allowed that there might be limited occasions where an ALJ's RFC will pass muster even where it does not specifically account for deficiencies in CPP. In *O'Connor-Spinner*, the court, in the midst of wading through its varied rulings on CPP issue, said:

> We also have let stand an ALJ's hypothetical omitting the terms "concentration, persistence and pace" when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform. We most often have done so when a claimant's limitations were stress- or panic-related and the hypothetical restricted the claimant to low-stress work.

627 F.3d at 619. This is not a case involving stress- or panic-related limitations, however. Moreover, and more importantly, it is not "manifest" that "unskilled" specifically excludes jobs that someone with difficulty concentrating would be unable to perform.

An unskilled job may, nevertheless, exceed the limits of someone's concentration. *See Kasarsky*, 335 F.3d at 544(". . . the length of time it takes someone with borderline intelligence to learn a job is not the same as the ability of that person to perform consistently once trained."); SSR 85–15, 1985 WL 56857 (1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.").

It's easy to imagine an unskilled job that involves a conveyor delivering a product to a worker who must then place it in a receptacle – product after product, receptacle after receptacle, over and over, at a pace. Many unskilled, simple jobs are made up of precisely this type of tedium. Those of a certain age might recall the classic Lucille Ball-Vivian Vance sketch where the two were tasked with wrapping candies coming down a conveyor at a candy factory. *See* http://www.youtube.com/watch?v=8NPzLBSBzPI.[2] The job is exceedingly simple; it is unskilled. But for one whose concentration waxes and wanes, or cannot persist or maintain a pace throughout the day, it is a daunting if not impossible occupation. This is why a limitation to unskilled, simple work does not necessarily account for a limitation in concentration. And it is a second reason why this matter must be remanded to the Commissioner.

---

[2] The sketch is so timeless it continues to be shown on I Love Lucy reruns to this day.

**3.**

That brings us to Ms. Wilcox's obesity. This, too, is a thorny issue for the Seventh Circuit. *See, e.g., Browning v. Colvin*, 766 F.3d 702, 707 (7th Cir. 2014)("There is more that's wrong with the administrative law judge's decision, including his failure, which continues to be endemic in the Social Security Administration's disability adjudications despite our frequent criticisms of it . . . to consider the bearing of obesity, even when not itself disabling, on a claimant's ability to work."); *Browning v. Colvin*, 766 F.3d 702, 706 (7th Cir. 2014); *Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014)("The administrative law judge gave meager attention to the plaintiff's obesity, on the ground that "the record does not support an inability to ambulate effectively." We keep telling the Social Security Administration's administrative law judges that they have to consider an applicant's medical problems in combination.").[3] Here, the ALJ said that Ms. Wilcox was overweight and not obese (R. 19), despite at least two physicians diagnosing her as obese.[4]

The ALJ explained that she was accounting for Ms. Wilcox's obesity:

> . . . in contemplating the residual functional capacity assessment about lined [sic] above. The claimant was documented as able to get on and off the exam table. She

---

[3] In this case, Ms. Wilcox did not raise the issue of obesity in her brief; and thus the Commissioner could have argued the issue was waived. But she did not do so and thus she waived the waiver argument. *Nunez v. United States*, 546 F.3d 450, 452 (7th Cir. 2008)(Easterbrook, J.)(The beneficiary of a waiver can explicitly and consciously surrender the benefit of the waiver). It is only out of an abundance of caution and a concern for waste of judicial resources. that we add the obesity question to the list of things to consider on remand. Recently, the Commissioner moved under Fed.R.Civ.P. 60(b) and 62.1 for an order remanding a case for consideration of obesity – *inter alia* – where the claimant had waived the issue. This came a year after the ALJ's decision was upheld and nine months after the claimant appealed the case to the Seventh Circuit. *See Triplett v. Colvin*, 2014 WL 4978658 (N.D.Ill. 2014).

[4] Ms. Wilcox testified that she was 5'6" tall and weighed 200 pounds. That would put her BMI at 32.3, categorizing her as obese. http://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm. The ALJ relied on one of the records from a consultative medical examination in April 2011 that put her weight at 185 and gave her a BMI of 29.9, the very upper reaches of "overweight." The consulting physician, nonetheless, categorized Ms. Wilcox as obese. (R. 19, 550, 552).

could walk 50 feet without support and tandem gait. [The doctor] described the
claimant's gait as small-stepped and noted she was wearing a back brace.

(R. 19). From that, it is unclear how the residual functional capacity assessment accounts for obesity. Or, at least, we have little confidence that this manner of accounting for obesity would pass muster with the Seventh Circuit.

One supposes that the ALJ felt that limiting Ms. Wilcox to sedentary work with the option of standing 15 to 20 minutes at a time did the job. But recently, speaking for the Seventh Circuit, Judge Posner noted that obesity might make even sedentary work difficult and that getting up from time to time might be painful. *Browning v. Colvin*, 766 F.3d 702, 707 (7th Cir. 2014). He felt the ALJ ought to specifically discuss the obesity's bearing on the ability to do sedentary work, and instruct the consulting physician to consider its effect as well. 766 F.3d at 707. The ALJ did not do that here. On remand, this is an issue that prudence dictates be addressed unless it is not raised by the plaintiff in which case it would be waived.

## CONCLUSION

The plaintiff's motion for remand [Dkt. #12] is GRANTED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE: 1/9/15**